1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8    LATREASHA MCCOY,

              Plaintiff,

9

10         v.

11   ANDREW M. SAUL,

              Defendant.

12

13

Case No.  18-cv-05060-VKD

**ORDER RE CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 29, 33

14         Plaintiff LaTreasha McCoy appeals a final decision of the Commissioner of Social

15   Security ("Commissioner")[1] denying her application for supplemental security income ("SSI")

16   under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381, *et seq*.  The parties have

17   filed cross-motions for summary judgment.[2]

18         Ms. McCoy contends that the Commissioner's denial of benefits reflects multiple errors:

19   (1) the administrative law judge ("ALJ") improperly weighed the medical and other source

20   statements; (2) the ALJ failed to provide sufficient reasons for discounting Ms. McCoy's

21   statements regarding the severity and limiting effects of her impairments; (3) the ALJ erred in

22   finding that Ms. McCoy's impairments do not meet or equal listing 12.15; and (4) the ALJ erred

23   by failing to obtain the opinion of a vocational expert ("VE") to determine Ms. McCoy's ability to

24   perform other work.  The Commissioner contends that his decision is supported by substantial

25

26   ───────────────

[1] Pursuant to Fed. R. Civ. P. 25(d), Andrew M. Saul is substituted for his predecessor, Nancy A.
27   Berryhill.

28   [2] Neither side complied with this Court's order to submit statements regarding the administrative
record.  Dkt. No. 19.

United States District Court
Northern District of California

1    evidence and is free from legal error.

2         The matter was submitted without oral argument.  Upon consideration of the moving and

3    responding papers and the relevant evidence of record, for the reasons set forth below, the Court

4    grants in part and denies in part Ms. McCoy's motion for summary judgment and grants in part

5    and denies in part the Commissioner's cross-motion for summary judgment, and remands this

6    matter for further proceedings consistent with this order.[3]

7    **I.    BACKGROUND**

8         Ms. McCoy was born in 1973 and has a high school education.  Her past employment

9    includes work as a homecare giver, insulation worker, customer service clerical worker, shuttle

10   bus driver, and delivery route truck driver.  She attended barber college in 2014.  AR[4] 37, 40, 209.

11        On April 29, 2014, Ms. McCoy applied for SSI, alleging disability beginning September 1,

12   2007 due to degenerative bone disease, scoliosis, depression, and other mental and physical issues.

13   AR 64, 154.  Her application was denied initially and on review.  An ALJ held a hearing and, after

14   holding the record open for the receipt of post-hearing evidence, he issued an unfavorable decision

15   on September 25, 2017.  AR 14-26.  The ALJ found that Ms. McCoy has not engaged in

16   substantial gainful activity since April 29, 2014, when she applied for SSI.  AR 17.  The ALJ

17   further found that she has the following severe impairments:  degenerative disc disease, scoliosis,

18   affective disorders, anxiety disorder, and post-traumatic stress disorder ("PTSD").  *Id*.  However,

19   the ALJ concluded that Ms. McCoy does not have an impairment or combination of impairments

20   that meets or medically equals the severity of one of the impairments listed in the Commissioner's

21   regulations.  AR 18.  The ALJ determined that Ms. McCoy has the physical residual functional

22   capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 416.967(c), and can perform

23   simple, routine tasks equating to unskilled work.  AR 20.  The ALJ found that Ms. McCoy is

24   unable to perform any past relevant work and that transferability of job skills is not material to the

25

26   ───────────────

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally
27   adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 10, 14, 20.

28   [4] "AR" refers to the certified administrative record lodged with the Court.  Dkt. No. 21.

United States District Court
Northern District of California

1   disability determination.  AR 24-25.  Looking to the Medical-Vocational Guidelines, 20 C.F.R.,

2   Part 404, Subpt. P, App. 2, the ALJ concluded that there are jobs that exist in significant numbers

3   in the national economy that Ms. McCoy can perform.  AR 25.  Accordingly, the ALJ determined

4   that Ms. McCoy has not been disabled, as defined by the Act, at any time since April 29, 2014, the

5   date on which she applied for SSI.  *Id.*

6          The Appeals Council denied Ms. McCoy's request for review of the ALJ's decision.

7   AR 1-3.  Ms. McCoy then filed the present action seeking judicial review of the decision denying

8   her application for benefits.

9   **II.      STANDARD OF REVIEW**

10         Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's

11  decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not

12  supported by substantial evidence or if it is based upon the application of improper legal

13  standards.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v.*

14  *Chater*, 60 F.3d 521, 523 (9th Cir. 1995).  In this context, the term "substantial evidence" means

15  "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a

16  reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523;

17  see also *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  When determining whether

18  substantial evidence exists to support the Commissioner's decision, the Court examines the

19  administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966

20  F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to

21  support more than one rational interpretation, the Court must defer to the decision of the

22  Commissioner.  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

23  **III.     DISCUSSION**

24         **A.      Medical and Other Source Opinions**

25         Ms. McCoy argues that the ALJ erred in giving significant weight to the mental health

26  assessments of two nonexamining state agency consultants, Owen Daniels, M.D. and R. Warren,

27  M.D., while giving little weight to the opinions of those who examined or treated Ms. McCoy,

28  namely psychologist Lisa Kalich, Psy.D., psychiatrist Aislinn Bird, M.D., psychologist Lesleigh

United States District Court
Northern District of California

Franklin, Ph.D., and social worker Kari Jennings-Parriott.[5]

### 1.    Legal Standard[6]

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.*

A treating physician's opinion is entitled to "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). "However, '[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

When an ALJ gives a treating physician's opinion less than controlling weight, the ALJ must do two things. First, the ALJ must consider several factors, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017);[7] *see also* 20 C.F.R. § 416.927(c). Consideration must also be given to other factors, whether raised by the claimant or by others, or

---

[5] Ms. McCoy does not appear to challenge the ALJ's assessment of the opinion of state agency consultant H. Samplay, M.D. regarding her physical conditions, or of examining consultant Todd Nguyen, D.O., who performed an orthopedic evaluation.

[6] Although the Commissioner initially refers to the rules and regulations regarding the evaluation of medical evidence that were revised in 2017 (Dkt. No. 33 at 1 n.1), there appears to be no dispute that those revisions do not apply to Ms. McCoy's SSI claim, which was filed before those revisions went into effect (Dkt. No. 33 at 3 n.3).

[7] Although *Trevizo* concerned an application for disability insurance benefits under Title II of the Social Security Act, in discussing the proper assessment of medical opinions, the *Trevizo* court addressed regulations that parallel those applicable to SSI applications.

United States District Court
Northern District of California

if known to the ALJ, including the amount of relevant evidence supporting the opinion and the quality of the explanation provided; the degree of understanding a physician has of the Commissioner's disability programs and their evidentiary requirements; and the degree of his or her familiarity with other information in the case record.  20 C.F.R. § 416.927(c)(6).  The failure to consider these factors, by itself, constitutes reversible error.  *Trevizo*, 871 F.3d at 676.

Second, the ALJ must provide reasons for rejecting or discounting the treating physician's opinion.  The legal standard that applies to the ALJ's proffered reasons depends on whether or not the treating physician's opinion is contradicted by another physician.  When a treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for rejecting or discounting the opinion, supported by substantial evidence.  *Trevizo*, 871 F.3d at 675.  When a treating physician's opinion is contradicted by another physician, an ALJ must provide "specific and legitimate reasons" for rejecting or discounting the treating physician's opinion, supported by substantial evidence.  *Id.*  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quotations and citation omitted).

"As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."  *Lester*, 81 F.3d at 830).  "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.* at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)); *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.  This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'") (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

United States District Court
Northern District of California

1    The opinions of the nonexamining consultants Drs. Daniels and Warren contradict those

2 sources who examined or treated Ms. McCoy and who concluded that Ms. McCoy's functional

3 abilities are more limited.  Thus, the ALJ was required to provide "specific and legitimate"

4 reasons for the weights assigned to these opinions, supported by substantial evidence.  *Trevizo*,

5 871 F.3d at 675.

6              **2.      Owen Daniels, M.D. and R. Warren, M.D.**

7    With respect to Ms. McCoy's mental limitations, the ALJ's findings are based largely on

8 the opinions of two nonexamining state agency consultants, Owen Daniels, M.D. and R. Warren,

9 M.D., to which the ALJ gave significant weight.  In September 2014, Dr. Daniels found that Ms.

10 McCoy is moderately limited in her abilities to understand and remember detailed instructions,

11 interact appropriately with the general public, and accept instructions and respond appropriately to

12 criticism from supervisors, but is otherwise not significantly limited in other areas of mental

13 functioning.  AR 57-58.  Dr. Daniels concluded that Ms. McCoy's mental limitations allow her to

14 perform "basic tasks requiring minimal interaction."  AR 58.  In March 2015, Dr. Warren also

15 found that Ms. McCoy is moderately limited in her abilities to understand and remember detailed

16 instructions, interact appropriately with the general public, and accept instructions and respond

17 appropriately to criticism from supervisors, but is otherwise not significantly limited in other areas

18 of mental functioning.  AR 74-75.  Dr. Warren concluded Ms. McCoy has the ability to

19 "understand and remember simple and detailed instructions"; "attend and concentrate for periods

20 of two hours as is required in the workplace"; "interact appropriately with peers and supervisors";

21 and "adapt to normal workplace changes."  AR 75.

22    In assigning significant weight to the opinions of Drs. Daniels and Warren, the ALJ

23 explained that both "doctors have program expertise"; "carefully reviewed the relevant medical

24 records at that time"; and made findings that "are consistent with the record as a whole, including

25 [Ms. McCoy]'s activities, which include attending college, cutting hair, and using public

26 transportation to travel . . . ."  AR 23.  Additionally, the ALJ noted that he did not find that Ms.

27 McCoy is required to limit her interaction with others to an extent inconsistent with most unskilled

28 work, but that "even a limitation to occasional interaction with others, or preclusion from public

6

1    interaction, would not preclude the performance of unskilled jobs existing in significant numbers

2    in the economy and would not result in a finding of disability in this case." *Id.*

3         "Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence

4    when they are supported by other evidence in the record and are consistent with it." *Morgan*, 169

5    F.3d at 600 (citing *Andrews*, 53 F.3d at 1041). As noted above, "[t]he ALJ can meet this burden

6    by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

7    stating his interpretation thereof, and making findings." *Id.* at 600-01 (quoting *Magallanes*, 881

8    F.2d at 750). The Court concludes that the opinions of Drs. Daniels and Warren do not constitute

9    substantial evidence that supports the ALJ's findings and that the ALJ failed to provide sufficient

10   specific and legitimate reasons for giving these opinions significant weight over the opinions of

11   Ms. McCoy's treating and examining sources.

12         While the ALJ properly considered Dr. Daniels's and Dr. Warren's understanding of the

13   Commissioner's disability programs, that is but one of several factors that must be considered

14   under 20 C.F.R. § 416.927(c)(6). Ms. McCoy argues, persuasively, that the ALJ either failed to

15   consider or did not adequately consider the other factors. She contends that the ALJ seemed to

16   equate Dr. Daniels's conclusion that she is limited to "minimal interaction" with others with a

17   limitation to "occasional interaction with others, or preclusion from public interaction," without

18   providing an explanation why. Additionally, Ms. McCoy argues that although Dr. Warren

19   appeared to provide a more expansive assessment of her abilities, seemingly inconsistent with Dr.

20   Daniels's conclusion that she is limited to "basic tasks requiring minimal interaction," the ALJ

21   said nothing about that potential inconsistency. Moreover, there is no dispute that the most recent

22   record the state agency reviewed was an October 2014 orthopedic evaluation, and that Drs.

23   Daniels and Warren did not have more recent records in which Ms. McCoy's treating and

24   examining physicians assessed more limited mental functioning. The Commissioner does not

25   directly refute many of these assertions, arguing only that the opinions of Drs. Daniels and Warren

26   are "consistent with the longitudinal record," without elaborating as to how or why that is so. Dkt.

27   No. 33 at 7.

28         The ALJ did not provide sufficient specific and legitimate reasons for giving significant

7

weight to the opinions of Drs. Daniels and Warren, while discounting the opinions of Ms.

McCoy's treating and examining sources, which are discussed below.

### 3.    Lisa Kalich, Psy.D.

Psychologist Lisa Kalich, Psy.D. evaluated Ms. McCoy in July 2014.  In addition to

reviewing Ms. McCoy's records from the Santa Rita Mental Health Services and the West

Oakland Health Council, Dr. Kalich interviewed Ms. McCoy and administered the Wechsler Adult

Intelligence Scale-IV and the Wechsler Memory Scale-III, Abbreviated.  AR 503-509.  Dr.

Kalich's diagnostic impression is that Ms. McCoy's functioning is characterized by PTSD; severe

cocaine use disorder, early partial remission; unspecified neurocognitive disorder; and borderline

personality traits, with a need to rule out other specified depressive disorder and cocaine induced

depressive disorder.  AR 507.  Dr. Kalich noted that Ms. McCoy's "diagnostic presentation is

complicated by her dependence on cocaine," stating "[c]hronic addiction has likely exacerbated

Ms. McCoy's mood symptoms," and that while she demonstrates some symptoms consistent with

a depressive disorder, those symptoms may also be attributed to cocaine withdrawal.  AR 508.  Dr.

Kalich added that if Ms. McCoy "establish[es] a longer period of sobriety, her diagnostic picture

would become clearer."  *Id.*

Dr. Kalich assessed moderate to severe impairments in Ms. McCoy's activities of daily

living and moderate impairments in social functioning, and further noted that Ms. McCoy has

impaired memory functioning and would have difficulty maintaining regular attendance at work.

AR 508-509.  While she found that Ms. McCoy demonstrated no significant impairments with

respect to concentration and attention during the examination, Dr. Kalich noted that Ms. McCoy's

descriptions of frequent flashbacks and hypervigilance suggest that she has intermittently severe

deficits in concentration and attention.  AR 509.  Due to low energy and fatigue, Dr. Kalich found

mild impairments in Ms. McCoy's pace and persistence.  *Id.*  Dr. Kalich noted that Ms. McCoy's

descriptions of functioning suggest numerous past episodes of decompensation, marked by suicide

attempts, and further found that Ms. McCoy is vulnerable to experiencing future episodes of

decompensation.  *Id.*  Dr. Kalich remarked that Ms. McCoy likely needs ongoing treatment for

anxiety, but that even with necessary treatment, her prognosis is guarded in view of what Dr.

United States District Court
Northern District of California

8

1  Kalich found to be Ms. McCoy's management of anxiety through avoidance, her "problematic

2  personality features," and her "struggle to maintain her sobriety." *Id.*

3        The ALJ gave Dr. Kalich's opinion little weight, explaining that "[i]t was based on a one-

4  time evaluation of [Ms. McCoy], was conducted approximately one month after [Ms. McCoy]'s

5  reported use of cocaine, and appears overly reliant on [Ms. McCoy]'s subjective reports." AR 24.

6  The ALJ further stated that Dr. Kalich's assessment of Ms. McCoy's impairments and her finding

7  that Ms. McCoy is vulnerable to experiencing future episodes of decompensation are

8  "contradicted by the record as a whole including [Ms. McCoy]'s activities of daily living, college

9  courses, and part-time work activities." *Id.*

10        On the record presented, the fact that Dr. Kalich examined Ms McCoy only once is not a

11  sufficient reason for rejecting her opinion. Indeed, the ALJ gave significant weight to the

12  orthopedic evaluation of Dr. Todd Nguyen, who also examined Ms. McCoy on only one occasion.

13  AR 23, 510-513. While the ALJ correctly noted that Dr. Kalich's evaluation took place one

14  month after Ms. McCoy used cocaine, Dr. Kalich took that into account in her assessment. The

15  ALJ failed to articulate a reason why Ms. McCoy's cocaine use one month beforehand justifies

16  giving Dr. Kalich's opinion little weight. Additionally, Ms. McCoy also correctly notes that the

17  ALJ failed to explain how or why he found Dr. Kalich's opinion—which was based on her review

18  of Ms. McCoy's records, her interview of Ms. McCoy, and administered tests—was "overly

19  reliant" on Ms. McCoy's subjective reports. Further, Ms. McCoy contends that the ALJ failed to

20  explain what specific limitations noted by Dr. Kalich he found to be contradicted by specific

21  record evidence.

22        The Commissioner does not directly refute these arguments. Instead, he argues that any

23  error in the ALJ's decision to give Dr. Kalich's opinion little weight is harmless. Citing *Stubbs-*

24  *Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), the Commissioner contends that the ALJ

25  adequately accounted for Dr. Kalich's opinions about Ms. McCoy's mental limitations by finding

26  that Ms. McCoy's is limited to an RFC for simple, routine, unskilled work.

27        In *Stubbs-Danielson*, the Ninth Circuit held that an "an ALJ's assessment of a claimant

28  adequately captures restrictions related to concentration, persistence, or pace where the assessment

United States District Court
Northern District of California

1    is consistent with restrictions identified in the medical testimony." 539 F.3d at 1174. However,

2    "the Ninth Circuit and district courts in the Ninth Circuit have held that *Stubbs-Danielson* does not

3    control in cases where the limitations relate to functional areas other than concentration,

4    persistence, and pace, such as social functioning and attendance." *Panziera v. Berryhill*, No. 17-

5    cv-02719-LHK, 2018 WL 278623, at *20 (N.D. Cal. Jan. 3, 2018) (collecting cases). The ALJ's

6    limitation to simple, routine, unskilled work does not account for the other limitations in Dr.

7    Kalich's opinion, including social and attendance-related limitations.

8         Moreover, as noted by another court in this district, "in at least two unpublished cases

9    [decided after *Stubbs-Danielson*] the Ninth Circuit has held that limiting the claimant's potential

10   work to simple work did not sufficiently account for moderate limitations in concentration,

11   persistence, or pace." *Morris v. Saul*, No. 18-cv-06672-JCS, 2020 WL 1307009, at *19 (Mar. 19,

12   2020). In *Brink v. Comm'r Soc. Sec. Admin.*, 343 Fed. Appx. 211 (9th Cir. 2009), the Ninth

13   Circuit concluded that "[t]he Commissioner's contention that the phrase 'simple, repetitive work'

14   encompasses difficulties with concentration, persistence, or pace is not persuasive" where, unlike

15   *Stubbs-Danielson*, the medical evidence establishes that the claimant has difficulties with

16   concentration, persistence, or pace. *Id.* at 212. *See also Lubin v. Comm'r Soc. Sec. Admin.*, 507

17   Fed. Appx. 709 (9th Cir. 2013) (concluding that limiting the claimant "to one to three step tasks"

18   did not capture the limitation in concentration, persistence, or pace found by the ALJ, and that the

19   ALJ erred by not including this limitation in the RFC determination or in the hypothetical question

20   posed to the VE). Here, Dr. Kalich assessed mild impairments in Ms. McCoy's pace and

21   persistence and found that she has intermittently severe deficits in concentration and attention.

22   AR 509.

23        Citing *Hoopai v. Astrue*, 499 F.3d 1071, 1075-78 (9th Cir. 2007), the Commissioner

24   nonetheless maintains that any error in the ALJ's decision to give Dr. Kalich's opinion little

25   weight is harmless, arguing that the ALJ is not required to present moderate mental limitations in

26   his RFC finding, even where a claimant has limitations in areas such as maintaining pace and

27   social functioning. Dkt. No. 33 at 4. In *Hoopai*, the Ninth Circuit held that a determination, at

28   step two of the sequential analysis, that an impairment is severe is not dispositive of the question

United States District Court
Northern District of California

United States District Court
Northern District of California

1   at step five whether the claimant's impairment is sufficiently severe so as to require a VE's

2   testimony to determine whether the claimant  can perform work in the economy.  *Id.* at 1076 ("The

3   step two and step five determinations require different levels of severity of limitations such that

4   the satisfaction of the requirements at step two does not automatically lead to the conclusion that

5   the claimant has satisfied the requirements at step five.").  *Hoopai* is inapposite to the issue

6   presented here, i.e., whether the ALJ provided specific and legitimate reasons for giving little

7   weight to Dr. Kalich's assessment of Ms. McCoy's mental limitations.  For the reasons discussed

8   above, the Court finds that the ALJ did not do so.

9                  **4.     Aislinn Bird, M.D. and Lesleigh Franklin, Ph.D.**

10                      **a.     Dr. Bird**

11          Dr. Bird is a psychiatrist at the Lifelong Trust Health Center in Oakland, California who

12   saw Ms. McCoy in April 2017 for a psychiatric evaluation.  AR 614-618.  Additionally, in June

13   2017 Dr. Bird co-signed a mental impairment questionnaire with Kari Jennings-Parriot, LCSW,[8]

14   regarding Ms. McCoy's mental functioning.  AR 625-629.  In her report of her April 2017

15   evaluation, Dr. Bird noted Ms. McCoy's reported history of sexual and physical abuse and of daily

16   auditory hallucinations.  Dr. Bird stated that Ms. McCoy "meets criteria for PTSD (nightmares,

17   flashbacks, hypervigilance, avoidance behavior, difficulty being in crowds)" and remarked that

18   Ms. McCoy's auditory hallucinations are "due to severe and chronic PTSD, not [due to] a primary

19   psychotic disorder . . .."  AR 617.  Dr. Bird assessed PTSD, major depressive disorder (recurrent,

20   moderate), and cocaine use (unspecified, uncomplicated).  *Id.*  She opined that "[g]iven [Ms.

21   McCoy]'s severe and chronic psychiatric conditions that interfere with her ability to concentrate,

22   motivate or handle stress, she is not expected to be able to maintain gainful employment."  *Id.*

23          The June 2017 mental impairment questionnaire states that "Ms. McCoy is cooperative but

24   poorly engaged due to crisis, retraumatization and multiple psychosocial stressors.  She regularly

25   presents in crisis."  AR 625.  The questionnaire proceeds to assess Ms. McCoy with various mild,

26   marked, moderate and extreme limitations in several areas of mental functioning, but assesses her

27   _____

28   [8] The parties' arguments concerning the ALJ's assessment of Ms. Jennings-Parriott's statement are
     discussed separately below.

United States District Court
Northern District of California

with overall marked limitations in concentration, persistence and pace and in her ability to understand, remember and apply information, as well as overall extreme limitations in her ability to interact with others and in her ability to adapt or manage herself.  AR 627-628.

### b.   Dr. Franklin

Lesleigh Franklin, Ph.D. is a psychologist who supervised an examination of Ms. McCoy, conducted by Dionne Childs, M.S. in May 2017, to determine Ms. McCoy's cognitive functioning and the severity of her mental health symptoms.  AR 631-637.  In a report of that examination, co-authored with Ms. Childs, Dr. Franklin found no evidence of substance abuse on the day of the evaluation, and no evidence that Ms. McCoy was exaggerating her symptoms for personal gain. AR 635.  The report further notes that Ms. McCoy's global assessment of functioning "would describe Ms. McCoy as having impairment in social and occupational functioning."  *Id*.  Ms. McCoy was found to have functional impairments in language, visuospatial abilities, immediate memory, delayed memory and executive functioning.  *Id*.  Based on the interview with Ms. McCoy and a review of her records, the report concludes that Ms. McCoy meets the criteria for major depressive disorder, PTSD, major neurocognitive disorder, and other substance abuse disorder.  AR 636.  Noting that Ms. McCoy also experiences a number of psychosocial stressors, and that some records "suggest bipolar disorder without criteria that was met to fall within that diagnostic category," the report recommends that Ms. McCoy maintain and increase regular psychotherapy session attendance and psychiatric medication evaluation compliance.  *Id*.

With respect to Ms. McCoy's mental abilities and aptitudes needed to perform unskilled work, Dr. Franklin and Ms. Childs assessed moderate to extreme limitations in all areas.  The reports notes moderate limitations in the abilities to understand, remember and carry out very short and simple instructions; get along and work with others; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors.  AR 637. The report indicates marked limitations in Ms. McCoy's abilities to maintain attention and concentration for two hour segments; perform at a consistent pace without an unreasonable number and length of rest periods; and maintain regular attendance and be punctual within customary, usually strict tolerances.  *Id*.  The report notes extreme limitations in Ms. McCoy's

abilities to understand, remember and carry out detailed instructions; respond appropriately to changes in a routine work setting and deal with normal work stressors; and complete a normal workday and workweek without interruptions from psychologically based symptoms. *Id*.

### c.    The ALJ's Assessment

Addressing the opinions of Drs. Bird and Franklin together, the ALJ gave both little weight, explaining that "these opinions were not based on program expertise or a longstanding treating relationship, and they appear overly reliant on the claimant's subjective reports and not consistent with the large treatment gaps, non-compliance with medical advice, ability to attend college courses, and lack of psychiatric hospitalizations during the relevant period (Exhibits 13F and 14F)." AR 24.  The parties dispute whether the ALJ failed to properly consider each of the requisite factors for weighing medical source statements under 20 C.F.R. § 416.927(c)(6).

With respect to the length of the treatment relationship, frequency of examination and nature and extent of the treatment relationship, the ALJ stated that neither Dr. Bird nor Dr. Franklin had a longstanding treating relationship with Ms. McCoy.  AR 24.  There is no dispute that Dr. Franklin supervised an examination of Ms. McCoy on one occasion.  AR 631-637.  With respect to Dr. Bird, the Commissioner does not dispute that Ms. McCoy had been receiving treatment at the Lifelong Health Center for about a year prior to Dr. Bird's assessment, but nonetheless points out that the record indicates that Dr. Bird examined Ms. McCoy on only one occasion.  In any event, the fact that Drs. Bird and Franklin examined Ms. McCoy one time is not a legitimate reason for discounting their opinions in favor of the opinions of Drs. Daniels and Warren, who never examined Ms. McCoy at all.

The ALJ appears to have considered specialization generally, insofar as he noted that Dr. Bird holds a medical degree and that Dr. Franklin holds a doctorate degree.  AR 24.  Additionally, there appears to be no dispute that neither Dr. Bird nor Dr. Franklin has any particular expertise with respect to the Commissioner's disability programs.  The Commissioner argues that these were proper factors for the ALJ to consider.  Even so, the Commissioner does not identify any particular issue in this case that suggests these factors necessarily should detract from the weight given to the opinions of Drs. Bird and Franklin.

13

As for supportability and consistency of the opinions, the ALJ states that Drs. Bird and Franklin "appear overly reliant on the claimant's subjective reports." He does not, however, further elaborate or cite any evidence to support that conclusion. Moreover, the report co-authored by Dr. Franklin indicates that the assessments therein are based on the interview of Ms. McCoy, a review of her records, and the results of the tests administered, including test results that indicated that Ms. McCoy is not prone to exaggerating her symptoms and was generally truthful and put forth adequate effort during the examination. AR 633. The ALJ's statement that Drs. Bird and Franklin were "overly reliant" on Ms. McCoy's subjective is not supported by substantial evidence.

As further reasons for discounting the opinions of Drs. Bird and Franklin, the ALJ cites Ms. McCoy's "ability to attend college courses," and a lack of mental health treatment and Ms. McCoy's non-compliance with medical advice. AR 24. The record indicates that Ms. McCoy attended barber college and cut hair in 2014, approximately three years before Drs. Bird and Franklin assessed her. AR 37, 199. Given the length of time between those activities and Dr. Bird's and Dr. Franklin's respective assessments, the ALJ's decision to discount their opinions on that basis is not supported by substantial evidence.

With respect to the ALJ's findings regarding a lack of mental health treatment and non-compliance with medical advice, Ms. McCoy acknowledges that her treatment history is "sporadic" (Dkt. No. 29 at 15), but contends that the ALJ failed to consider evidence concerning her difficulty engaging in treatment. There is no bright-line rule that the failure to receive mental health treatment can never provide a legitimate reason for rejecting the opinions of an examining or treating physician. However, in *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996), "the Ninth Circuit cautioned that in the case of mental impairments, it may not be appropriate to infer based on failure to obtain treatment that a claimant's impairment is not severe." *Fillmore v. Astrue*, No. C–10–03655 JCS, 2012 WL 298341, at *22 (N.D. Cal. Feb. 1, 2012). In *Nguyen*, the Ninth Circuit found that the ALJ did not provide a specific and legitimate reason for favoring the opinion of a nonexamining psychologist over that of an examining psychologist. In reaching that conclusion, the Ninth Circuit remarked that a claimant "'may have failed to seek psychiatric

1   treatment for his mental condition, but it is a questionable practice to chastise one with a mental

2   impairment for the exercise of poor judgment in seeking rehabilitation.'"  *Nguyen*, 100 F.3d at

3   1465 (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

4        In the present case, the ALJ noted that while incarcerated in 2013 and 2015, Ms. McCoy

5   had access to mental health treatment, but stopped attending mental health appointments after

6   receiving psychotropic medications.  Here, the ALJ cites a record indicating that Ms. McCoy

7   missed a mental health appointment and wrote a note that she cannot sleep and has nightmares.

8   AR 21, 502.  The ALJ further states that after being released in October 2013, Ms. McCoy did not

9   seek regular mental health treatment for years, noting that on June 9, 2016 she sought court-

10  ordered rehabilitation treatment, but denied any history of psychiatric hospitalization or outpatient

11  care.  AR 21, 560.  Additionally, the ALJ notes that Ms. McCoy completed only 25 days of her 6-

12  month court-ordered treatment, leaving her medications behind at the rehabilitation program, and

13  did not seek treatment from an outpatient psychologist (i.e., Dr. Bird) until April 2017.  AR 21,

14  22, 569, 617.

15       The ALJ's observation that Ms. McCoy did not seek *regular* mental health treatment

16  appears to be accurate, so far as it goes.  While Ms. McCoy correctly notes that the record

17  indicates that she did receive some mental health treatment in the two year period between April

18  29, 2014 and June 9, 2016 where the ALJ noted "large treatment gaps," (AR 22)[9] she does not

19  dispute that her mental health treatment history is "sporadic" (Dkt. No. 29 at 15).  Even so, the

20  record indicates that Ms. McCoy has struggled with periods of homelessness.  AR 560, 569, 592,

21  610.  Moreover, Dr. Kalich noted that Ms. McCoy has trust issues, deals with anxiety through

22  avoidance, and "prefers not to be around people at all," and Dr. Bird described her as "poorly

23  engaged due to crisis, retraumatization and multiple psychosocial stressors."  AR 505, 509, 625.

24

25  [9] Ms. McCoy points out that a record of a January 2015 visit to the West Oakland Health Council
    notes "anxiety and depression" and that she first visited the Lifelong Health Center in mid-2016,
26  when "major depressive disorder" was noted on Ms. McCoy's "problem list" and Ms. McCoy was
    given a prescription for the antidepressant trazadone.  AR 516, 582, 585.  Ms. McCoy also notes
27  that the record indicates that she was psychiatrically hospitalized in 1992 at age 19 for an
    unspecified mental disorder; other portions of the record indicate that the hospitalization may have
28  been for a "bad drinking problem."  AR 638, 639, 644.

United States District Court
Northern District of California

On this record, the Court finds that the ALJ's citations to mental health treatment gaps and alleged non-compliance with medical treatment do not constitute specific and legitimate reasons for rejecting Dr. Bird's and Dr. Franklin's respective findings.

In sum, the ALJ did not provide sufficient specific or legitimate reasons for giving little weight to the opinions of Drs. Bird and Franklin, in favor of the opinions of the nonexamining state agency physicians.

### 5.   Kari Jennings-Parriott, LCSW

Ms. Jennings-Parriott is a social worker at the Lifelong Trust Health Center who met with Ms. McCoy for several psychotherapy sessions between June and August 2016.  In June 2017, Ms. Jennings-Parriott wrote a letter opining that "due to Ms. McCoy's extensive trauma history and depressive symptoms she has difficulty being in the presence of others . . .," particularly in unfamiliar environments.  AR 670.  She further noted Ms. McCoy's difficulty keeping appointments "due to her psychiatric symptoms, which recurrently give rise to avoidance, re-experiencing, numbness (i.e., freezing up and shutting down), and panic attacks." *Id*.  As noted above, in June 2017, Ms. Jennings-Parriott co-signed the mental impairment questionnaire indicating that Ms. McCoy has overall marked or extreme limitations in her mental functioning. AR 625-629.

The ALJ gave Ms. Jennings-Parriott's letter "little weight," stating that "[a] social worker is not an acceptable medical source, although the assessment has been considered, and the assessment is not consistent with the record including, *inter alia*, [Ms. McCoy]'s ability to attend barber college, cut hair, lack of psychiatric hospitalizations and the medical evidence since her application date."  AR 24.  Ms. McCoy argues that the ALJ failed to provide germane reasons for discounting Ms. Jennings-Parriott's opinion.

Social workers are not considered "acceptable medical sources" and are treated as "other sources" whose testimony may be disregarded "if the ALJ gives reasons germane to each witness for doing so."  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).  Ms. McCoy argues that in discounting the weight given to Ms. Jennings-Parriott's letter, the ALJ incorrectly noted a "lack of psychiatric hospitalizations."  Here, and as noted above, Ms. McCoy points out

United States District Court
Northern District of California

that she was psychiatrically hospitalized for an unspecified mental disorder in 1992 when she was age 19, and the record indicates that the hospitalization was for a "bad drinking problem."  AR 638-639, 644.  That hospitalization occurred over 20 years before Ms. Jennings-Parriott wrote her letter, and there is no record of any other psychiatric hospitalization.  While the absence of recent hospitalization may be considered in evaluating the severity of Ms. McCoy's impairments, the Court agrees that the ALJ did not sufficiently explain why a lack of treatment rising to the level of hospitalization is inconsistent with Ms. Jennings-Parriott's opinions regarding Ms. McCoy's current mental functioning.  Moreover, the record indicates that Ms. McCoy attended barber college and cut hair for a short period in 2014, over three years before Ms. Jennings-Parriott's letter.  AR 37, 199.  The Court agrees that the ALJ's statement that Ms. Jennings-Parriott's "assessment is not consistent with . . . the medical evidence since her application date" is too vague to be germane.

In sum, the ALJ failed to provide germane reasons for giving little weight to Ms. Jennings-Parriott's opinions.

### B.  Ms. McCoy's Complaints of Pain

As noted above, the ALJ found that Ms. McCoy has severe medically determinable impairments of degenerative disc disease and scoliosis.  AR 17.  While he noted that these conditions could reasonably be expected to produce Ms. McCoy's alleged symptoms, the ALJ concluded that Ms. McCoy's statements concerning the intensity, persistence and limiting effects of those symptoms are not consistent with the evidence as a whole.  AR 23.  Ms. McCoy contends that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discrediting her statements as to the intensity, persistence and limiting effects of her symptoms.

In evaluating the credibility of a claimant's testimony regarding subjective symptoms, an ALJ must engage in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. at 1036 (internal citations and quotation marks omitted).  The claimant is not required to show that his impairment "could reasonably be expected to cause the

severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation omitted). "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity . . . ." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (internal citation omitted). Unless there is affirmative evidence showing that the claimant is malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Here, the ALJ made no finding of malingering and therefore was required to provide specific, clear and convincing reasons for discounting Ms. McCoy's statements regarding her symptoms. *Tommasetti*, 533 F.3d at 1039.

Ms. McCoy contends that in discounting her statements regarding the severity of her physical symptoms, the ALJ did not specify which of her symptoms he found to be inconsistent with the record evidence, except to say that her reports of daily debilitating pain are inconsistent with the medical evidence. To the contrary, the ALJ identified Ms. McCoy's allegations, namely, "that her conditions affect her ability to carry over 5 pounds, sit for over an hour, walk over 1 city block, stand for over 1 hour, lift, bend, squat, reach, kneel, talk, stair-climb, use her hands, memorize, complete tasks, concentrate, understand, follow instructions, and get along with others." AR 20, 259, 261, 267. Additionally, the ALJ noted that Ms. McCoy reported that her back pain is chronic, daily and debilitating. AR. 20, 307.

The ALJ also discussed the evidence and explained the inconsistencies in the record that he concluded discredits Ms. McCoy's reports regarding the severity of her symptoms. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "Factors that an ALJ may consider in weighing a claimant's credibility include

United States District Court
Northern District of California

reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636.  Here, the ALJ noted that Ms. McCoy's treatment notes generally reflect only mild findings, and that in October 2014 Dr. Nguyen, D.O., an orthopedic consultative examiner, observed that Ms. McCoy has a normal gait and had no problems getting up from a chair, and noted negative straight leg-raising tests, normal muscle strength and ranges of motion, and intact sensation.  AR 21.  Despite Ms. McCoy's allegations of daily debilitating pain, the ALJ further noted that since her April 2014 SSI application date, Ms. McCoy did not seek to establish medical care for her physical conditions until January 28, 2015 when she sprained an ankle, and an examination on that date showed "[n]ormal range of motion, muscle strength, and stability in all extremities with no pain on inspection," as well as a normal gait.  AR 21, 517.  Additionally, the ALJ noted that Ms. McCoy stated that she takes over-the-counter pain medications for pain relief four times a week.  AR 21.  Ms. McCoy does not refute these findings, which are supported by substantial evidence in the record.  AR 259, 362, 421, 425, 430, 431, 511-513, 514, 517, 573.  "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'"  *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas*, 278 F.3d at 959).  The Court finds no error here.

### C.    Listing 12.15

At step three of the sequential analysis, the ALJ found that "[t]he severity of [Ms. McCoy]'s mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.15, or any other section" in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 18.  In making that finding, the ALJ concluded that Ms. McCoy's impairments did not satisfy the "paragraph B" or "paragraph C" criteria of each listed impairment. At issue here is whether the ALJ erred in concluding that Ms. McCoy's impairments do not meet or equal the listing for 12.15, which addresses "Trauma- and stressor-related disorders."

Ms. McCoy bears the burden of proving that she has an impairment that meets or equals the criteria listed in the regulations.  *See Burch*, 400 F.3d at 683.  "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed

19

impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Listing 12.15 contains criteria designated A, B and C.  To meet listing 12.15, Ms. McCoy must satisfy criteria in paragraph A of the listings, which requires medical documentation of certain characteristics or symptoms of a mental disorder, and the criteria in either paragraphs B or C, which describe the functional limitations associated with the disorder that are incompatible with the ability to work.  Ms. McCoy does not challenge the ALJ's finding that she does not satisfy the paragraph C criteria.  Rather, she argues that the ALJ's paragraph B analysis is flawed and that the ALJ failed to consider evidence (i.e., the opinions of Drs. Kalich, Bird, Franklin and Ms. Jennings-Parriott) that she says demonstrate that she satisfies the paragraph A criteria.  The Commissioner argues that the ALJ's paragraph B analysis is correct and, insofar as Ms. McCoy does not challenge the paragraph C findings, the Commissioner contends that it was unnecessary for the ALJ to explicitly address the criteria for paragraph A.

The Court turns first to the ALJ's analysis of the paragraph B criteria.  To satisfy the paragraph B criteria, Ms. McCoy must demonstrate that she has one extreme or two marked limitations in four areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. Part 404, Subpt P, App. 1 § 12.15.  A moderate limitation is one in which a claimant's ability to function in an area independently, appropriately, effectively, and on a sustained basis is fair.  *Id*. § 12.00(F)(2)(c).  A marked limitation is one in which a claimant's ability to function in an area independently, appropriately, effectively, and on a sustained basis is seriously limited.  *Id*. § 12.00(F)(2)(d).  An extreme limitation means that the claimant is unable to function independently, appropriately or effectively on a sustained basis.  *Id*. § 12.00(F)(2)(e).

The ALJ found that Ms. McCoy has moderate limitations in all four areas of functioning.  AR 19.  To support his conclusion, the ALJ relied on function reports submitted by Ms. McCoy and her fiancé, Wardell Brim, Jr.  For example, the ALJ noted that Ms. McCoy reported that she is able to pay bills, count change and use a checkbook; shop for groceries; prepare her own meals; care for her personal needs; help care for a dog; and use public transportation.  The ALJ also pointed out that Ms. McCoy was able to attend barber college; that her stated interests include

United States District Court
Northern District of California

20

United States District Court
Northern District of California

reading daily, as well as watching television and cutting hair; and that she reported spending her days getting ready for school, cleaning and studying.  Additionally, the ALJ noted Mr. Brim's statements that Ms. McCoy has no problem with memory, understanding, paying attention or following instructions.  AR 262-270, 298-306, 307-315.

Ms. McCoy does not dispute that she engages in these activities, although as discussed above, she contests the significance of her 2014 barber college attendance.  Moreover, she contends that the ALJ failed to demonstrate that any of her identified daily activities are transferrable to a work setting, and that he also erred in failing to consider evidence, namely the examining and treating source statements, that indicate that her ability to engage in these activities is more limited than suggested by the ALJ.  Ms. McCoy has not cited any authority for the proposition that the ALJ is obliged, at step three of the sequential analysis, to consider whether a claimant's activities are transferrable to a work environment.  Nevertheless, because the ALJ did err in his assessment of the medical and other source statements, the Court cannot conclude that he properly considered all of the relevant evidence in assessing whether Ms. McCoy satisfies the paragraph B criteria.  As such, the Court also cannot conclude that it was unnecessary for the ALJ to consider whether Ms. McCoy satisfies the paragraph A criteria.

### D.     The ALJ's Step Five Analysis

At step five, the ALJ looked to the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpt. P, App. 2, commonly referred to as "the grids," and concluded that there are jobs that exist in significant numbers in the national economy that Ms. McCoy can perform.  AR 25.  Ms. McCoy argues that, in view of her non-exertional mental impairments, the ALJ was obliged to obtain the opinion of a VE and that he erred by relying solely on the grids in determining that she is able to perform other work.

At step five of the sequential analysis, the Commissioner bears the burden to demonstrate that there are a significant number of jobs in the national economy that the claimant could perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  The Commissioner can meet that burden in two ways:  (1) through VE testimony or (2) by applying the grids, which "present, in *table form*, a short-hand method for determining the availability and numbers of suitable jobs for a

claimant." *Id*. at 1100-01.

"The grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment," *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988), but they may only be used "where they *completely and accurately* represent a claimant's limitations," *Tackett*, 180 F.3d at 1101. "In other words, a claimant must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work, or medium work." *Id*. However, the fact that a non-exertional limitation is alleged does not automatically preclude use of the grids. *Id.* at 1102. "The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id*. (internal quotations and citation omitted). "When a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable" and a VE's testimony is required. *Burkhart*, 856 F.2d at 1340 (citing *Desrosiers v. Sec'y Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)); *see also Lounsbury v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006) (stating that where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first and—if the grids do not classify the claimant as disabled—rely on other evidence to separately examine the non-exertional limitations).

As discussed above, the ALJ found that Ms. McCoy has both exertional and non-exertional limitations and concluded that she has the RFC to perform medium work, and can perform simple, routine tasks equating to unskilled work. AR 20. Although the ALJ retained a VE, who testified at the administrative hearing, the ALJ did not proffer any hypothetical to the VE to determine Ms. McCoy's ability to perform other work, despite her mental limitations. His step five analysis relies solely on the grids. The ALJ noted that "[i]f [Ms. McCoy] had the [RFC] to perform the full range of medium work, considering her age, education, and work experience, a finding of 'not disabled' would be directed by Medical-Vocational Rule 203.29." AR 25. Here, the ALJ concluded that Ms. McCoy's "additional limitations have little or no effect on the occupational base of unskilled medium work," adding that "a limitation to occasional interaction with others, or even preclusion from working with the public, which is not found applicable in this case, would

United States District Court
Northern District of California

United States District Court
Northern District of California

1 not reduce the base of unskilled jobs in the economy to less than significant numbers." *Id.*[10]

2 However, for the reasons discussed above, it is unclear whether Ms. McCoy's non-exertional

3 limitations were "sufficiently severe" so as to significantly limit the range of work permitted by

4 her exertional limitations.  Insofar as the Court agrees that the ALJ failed to properly assess the

5 opinions of Ms. McCoy's examining and treating sources, on remand the ALJ may be required to

6 obtain testimony from a VE in determining whether Ms. McCoy is disabled.  For that same reason,

7 to the extent the Commissioner also relies on *Hoopai* in support of his arguments here, that

8 reliance is misplaced.  As noted above, *Hoopai* holds that satisfaction of the step two threshold of

9 severity is not dispositive of the step five determination of whether the claimant can perform other

10 work in the economy, and the Ninth Circuit affirmed the ALJ's determination that the claimant's

11 depression did not constitute a sufficiently severe non-exertional limitation requiring vocational

12 testimony at step five of the sequential analysis.  *Id.* at 1076.  Here, unlike in *Hoopai*, Ms.

13 McCoy's treating and examining sources assessed moderate to extreme limitations on her

14 functional abilities that the ALJ, without proper explanation, disregarded.  Thus, *Hoopai* is

15 inapposite.

## IV.    DISPOSITION

17 "When the ALJ denies benefits and the court finds error, the court ordinarily must remand

18 to the agency for further proceedings before directing an award of benefits."  *Leon v. Berryhill*,

19 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d

20 1090, 1099 (9th Cir. 2014)).  Because it is not clear from the record that the ALJ would be

21 required to find Ms. McCoy disabled if all the evidence were properly evaluated, remand is

22 appropriate  On remand, the ALJ must properly evaluate the medical and other source evidence,

23 which may in turn affect the ALJ's analysis whether Ms. McCoy meets or equals the relevant

24 listings, Ms. McCoy's RFC, and whether she is able to work.   It is not the Court's intent to limit

25 the scope of the remand.

26

27 _____

[10] The ALJ also found that "even a limitation to light or sedentary work would not result in a
28 finding of disability under the [grids]."  AR 25.  However, Ms. McCoy's arguments concerning
the ALJ's step five findings focus on her non-exertional limitations.

1      Based on the foregoing, Ms. McCoy's motion for summary judgment is granted in part and

2  denied in part, the Commissioner's cross-motion for summary judgment is granted in part and

3  denied in part, and this matter is remanded for further proceedings consistent with this order.  The

4  Clerk of the Court shall enter judgment accordingly and close the file.

5      **IT IS SO ORDERED.**

6  Dated:  May 31, 2020

8  _Virginia K. DeMarchi_

9  VIRGINIA K. DEMARCHI
   United States Magistrate Judge